IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEXIA CRÉDIT LOCAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 10 C 1563 |
| | ) | |
| FREDERICK CUPPY and BURKE, COSTANZA & CUPPY, LLP, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Peter Rogan purchased Edgewater Hospital (EMC) in 1989. Though he sold it in 1994, he used two entities that he controlled to carry out a scheme to defraud the government by charging the Medicare and Medicaid programs for unnecessary medical services. In 1997, Rogan refinanced EMC's debt, and plaintiff Dexia Crédit Local issued a letter of credit guarantying repayment. When Rogan's healthcare fraud scheme came to light, the government stopped making Medicare / Medicaid reimbursements to EMC, and it defaulted on the debt. This required Dexia to pay on its letter of credit. Several lawsuits against Rogan and the related entities ensued. The government sued Rogan in May 2002 and obtained a $64 million judgment in October 2006. EMC sued Rogan in April 2004 and obtained judgments totaling $50 million, on which a judge ruled in October 2008 that Rogan was personally liable. Dexia sued Rogan in November 2002 and obtained a $124 million judgment in May 2007.

In this case, Dexia sues Rogan's attorney, Frederick Cuppy, and Cuppy's law

firm alleging they schemed to defraud Rogan's creditors and potential creditors so they would be unable to collect from him and the entities he controlled.  Dexia has asserted claims under the Racketeer Influenced and Corrupt Organizations Act (RICO) and under state law involving fraudulent transfers.  Cuppy's law firm has answered the complaint.  Cuppy has moved to dismiss the RICO claims under Federal Rules of Civil Procedure 12(b)(6) and 9(b) for failure to state a claim.  He also argues that if the RICO claims are dismissed, personal jurisdiction and venue are lacking on the state law claim.  The Court concludes that Dexia has stated viable RICO claims and thus need not consider the personal jurisdiction and venue issues.

**Standard**

A court considering a motion to dismiss under Rule 12(b)(6) must accept the facts alleged in the complaint as true and draw reasonable inferences in favor of the plaintiff. *See, e.g., Hallinan v. Fraternal Order of Police of Chicago Lodge No.* 7, 570 F.3d 811, 820 (7th Cir. 2009).  To survive the motion, the complaint must include enough facts to state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

Rule 9(b) requires that the circumstances of a claimed fraud be alleged with particularity.  A plaintiff claiming fraud must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Bankers Trust Co. v. Old*

*Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) (citations omitted); *see also Uni\*Quality Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) ("[i]n other words, the plaintiff must plead the 'who, what, when, and where' of the alleged fraud.").

## Discussion

A RICO claim under 18 U.S.C. § 1962(c) requires a plaintiff to demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Viacom, Inc. v. Harbridge Merchant Servs, Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)). A "pattern of racketeering activity," as defined by the statute, "requires at least two acts of racketeering activity" within ten years of each other. 18 U.S.C. § 1961(5). Cuppy argues that Dexia has inadequately alleged RICO predicate acts; it has failed to adequately allege a RICO enterprise; it has failed to allege a pattern of racketeering activity; and it has failed to allege a nexus between its injuries and Cuppy's alleged acts.

Dexia alleges that as of 1995, Rogan and Cuppy, his attorney, knew that Rogan was under scrutiny by the government and that litigation was likely. According to Dexia, Rogan and Cuppy devised and carried out a scheme to defraud Rogan's creditors and potential creditors by hiding his assets so they could not collect from him. This involved, Dexia alleges, setting up an offshore trust ostensibly independent of Rogan so that creditors could not get at its assets; creating concealed mechanisms that actually gave Rogan, via Cuppy, control over the trust's assets; transferring tens of millions of dollars in assets to the trust; and then funneling millions of dollars back to Rogan via distributions of trust assets. Dexia also alleges that when litigation began, Rogan, with

3

the advice and assistance of Cuppy, ignored court orders requiring him to produce trust records and withheld documents that would have shown that Rogan (via Cuppy) maintained control of the trust. Dexia also alleges that while litigation was ongoing, Cuppy devised a separate scheme to divert trust assets to Rogan via an account Cuppy had Rogan's wife Judith Rogan open at an offshore bank. Cuppy allegedly caused millions of dollars of trust funds to be transferred to this account, which Judith Rogan in turn (with Cuppy's assistance) transferred to Rogan via various intermediary accounts.

Dexia's allegations regarding these events are more than sufficient to meet the pleading requirements imposed by Rules 8(a) and 9(b). It is difficult to imagine a complaint that contains more detail. There are a few allegations made "on information and belief," but these are relatively insignificant by comparison to Dexia's detailed allegations, and the formulation is not inappropriate because they involve matters within the particular knowledge of others to whom Dexia has not had access at this point. Dexia has also sufficiently alleged the who, what, where, and when of the alleged fraudulent activity. Cuppy's arguments to the contrary are entirely lacking in merit.

Dexia has also adequately alleged multiple violations of the wire fraud statute, 18 U.S.C. § 1343. The alleged fraud consisted of setting up concealed mechanisms that allowed Rogan to have the benefit of and keep control over his assets though they were ostensibly held by trusts and thus unavailable to creditors. Concealment of assets from creditors via means such as those alleged in Dexia's complaint may constitute a scheme to defraud within the meaning of the mail and wire fraud statutes. *See, e.g., United States v. Feldman*, 853 F.2d 648, 654 (9th Cir. 1988); *Gutierrez v. Givens*, 989 F. Supp. 1033, 1040 (S.D. Cal. 1997). Contrary to Cuppy's argument, the law does not

4

require Dexia to show that it relied on any representation by Cuppy. *See Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131, 2138 (2008). Dexia has adequately alleged that Cuppy caused the use of interstate wire communications in furtherance of the scheme. *See* Compl. ¶¶ 183-85.

Dexia has also sufficiently alleged that Cuppy assisted Rogan in concealing assets from EMC's bankruptcy estate, in violation of the bankruptcy fraud statute, 18 U.S.C. § 152(a), and then conducted or caused financial transactions involving the proceeds of that alleged crime, in violation of the money laundering statute, 18 U.S.C. § 1956(a)(1) & (c)(7)(D). *See* Compl. ¶¶ 186 & 188; *see also, e.g., United States v. Holland*, 160 F.3d 377, 380 (9th Cir. 1998).

Dexia's allegations also meet, for purposes of a motion to dismiss, the requirement of a "pattern" of racketeering activity. To show a RICO pattern, the plaintiff must prove the defendant's commission of a series of predicate racketeering acts that show "continuity plus relationship." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Courts examine four factors to identify whether a pattern exists: (1) the number and variety of predicate acts and length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries. *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986). As Dexia argues, these are factors that a court considers, not requirements each of which a plaintiff must meet. In this case, there are multiple alleged victims: Dexia, the government, and other creditors of EMC. Each of those alleged victims suffered a distinct injury. There are numerous alleged predicate acts

5

committed over a period of two years: well over ten violations of the wire fraud statute, and multiple violations of the money laundering statute, from May 2005 through April 2007. Though all of this arguably furthered a single scheme, that is not dispositive. *See Morgan*, 804 F.2d at 975; *see also*, *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240-41 (1989). The Court concludes that Dexia has adequately alleged predicate acts that are related to each other and that constituted, or threatened to amount to, continued criminal activity. *H.J. Inc.*, 492 U.S. at 239.

The Court also rejects Cuppy's arguments regarding the enterprise and causation requirements of a civil RICO claim. First, Dexia has adequately alleged an association-in-fact enterprise. This requires "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 129 S. Ct. 2237, 2244 (2009). The enterprise need not have a hierarchical structure or chain of command, nor must its members have fixed roles, so long as it "function[s] as a continuing unit and remain[s] in existence long enough to pursue a course of conduct." *Id.* at 2245. The alleged enterprise of Cuppy, Rogan, and Judith Rogan had a common purpose and involved continuing relationships (familial and attorney-client), and it endured over a period of multiple years.

Second, Dexia has adequately alleged proximate cause, which under RICO requires only a showing that the plaintiff would not have been injured but for the defendants' conduct. *See Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268 (1992). Dexia has alleged that Cuppy and Rogan realized that Rogan would face

6

litigation as a result of the frauds perpetrated at EMC and schemed to hide Rogan's assets from creditors while allowing him to maintain control over them. Dexia was one of those creditors and thus was within the reasonable contemplation of Rogan and Cuppy when they devised and carried out the scheme. Dexia alleges that it was stymied in collecting from Rogan as a result of their activities.

Cuppy does not make a separate argument regarding the sufficiency of Dexia's RICO conspiracy claim under 18 U.S.C. § 1962(d).

## Conclusion

For these reasons, the Court concludes that Counts 1 and 2 of Dexia's complaint state claims upon which relief may be granted and therefore denies Cuppy's motion to dismiss [docket no. 21]. The Court thus need not address Cuppy's arguments regarding whether Dexia's state-law claims may be maintained in this district if the RICO claim is dismissed. Cuppy is directed to answer the complaint by no later than September 8, 2010.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 16, 2010